in his official capacity as Attorney General of the State of Texas Appellants, Ms. Pettit for the Appellant, Ms. Branch for the Appellees. Ms. Pettit, good morning. Thank you, Judge Henderson, and may it please the Court. The First Amendment conveys neither a license to commit fraud nor a license to commit fraud. nor the inalienable right to shop for the most favorable forum in which to litigate whether one has committed fraud. The easiest way for this Court to correct the District Court's erroneous conclusion to the contrary is to join its sister circuits in holding that a pre-enforcement challenge to a non-self-enforcing administrative subpoena is not cognizable in federal court. In the alternative, it should hold that this federal court is not the appropriate location to adjudicate the validity of an effort by the Attorney General of Texas to investigate potential violations of Texas law in Texas, an effort which is, in any event, entirely valid. Ms. Pettit, what, in your view, is the actual possible violation of Texas law here? The actual possible violation, and I would point this Court to 17.46b.8, is commercial disparagement of the good or service of another. In this instance, there is reason to think that Media Matters made factual representations about what is now excluded previously, Twitter's brand protection technology that were factually inaccurate and possibly harmed advertisers and consumers in Texas. So, is it your position that Attorney General Paxton can issue a CID, which is fairly intrusive, it asks for a lot of information, to any news outlet in the United States that publishes a story that he believes contains something that might be misleading? Not at all, Your Honor. In this particular instance, and I would point this Court to page 472 of the Joint Appendix, where Mr. I believe it's pronounced Carsoni, the CEO of Media Matters, was responding to the CID and discussed how this is a factual representation about their brand, about X's brand protection technology. As he put it, no matter how you slice it, they are misrepresenting what they're doing. Does that answer my question? So, whatever the nature of the misrepresentation, does Attorney General Paxton believe that he can issue a CID to any news outlet in the country because somebody in Texas might read the article, if that article contains something that he thinks is misleading about a business? That is not sufficient under Texas law to constitute commercial disparagement. He does have the ability to issue a CID if he thinks that there is reason to believe that the news outlet has violated the Texas Deceptive Trade Practices Act. But it's not just that they think that it's unfair or misleading. There has to be a connection to a good or service in Texas. And here, advertisers are X's primary customer, and those are, and misrepresentations about that brand technology is a violation, potentially a violation of the DCPA. So, anything that he thinks is misleading that could affect advertising income, he could issue a CID to any news outlet in the entire country? Yes, Your Honor, if it has the sufficient nexus to Texas. But that's one of the things, and it's important to point this out, that the CID... What's the nexus to Texas? In this particular instance, and this goes, and the federal court in the X lawsuit found a similar that affects advertisers in Texas. And that is what one of the issues that the CID is actually attempting to investigate, is whether there is an adequate nexus to Texas. And if, upon investigation, we conclude there's not, we're not going to bring an enforcement action. But this court has recognized, and I point this court to Reporters Committee for the Freedom of the Press on page 1051, that investigations of that type are necessary to protect the liberties that we enjoy, because there has to be some room for that. Otherwise, the news outlet would be claiming an exemption to generally applicable law, which the Supreme Court has repeatedly recognized they do not have. Ms. Pettit, the Attorney General, Attorney General Paxman, filed an amicus brief in the Northern District of Texas in the case of ExxonMobil Corporation versus Maura Tracy Healy. And that was about a CID issued by the Attorney General of Massachusetts. And I was just looking at the table of contents of this brief, and it says Attorney General, Attorneys General should act impartially. Attorneys General should not employ legal power to tip the scales in a policy debate. Attorneys General shouldn't target critics. Attorneys General shouldn't abuse of subpoena power. And politicized investigations undermine public confidence. I'm just wondering if you think any of these principles could be viewed as applying in this case. Your Honor, I would point to the specific content beyond the table of contents of that brief. And I point the Court in particular to the discussion in that brief about how the CID in question wasn't just aimed at disseminating accurate information. It was aimed at changing conduct outside of the courtroom. That is different from what is happening here. We are simply investigating whether there has been a misrepresentation. Media Matters is perfectly able and we have no problem with them saying anything they want and doing anything they want in the public policy space as long as they are not making material misrepresentations of fact that would affect Texas consumers. It also says here under targeting critics at JA 75, the First Amendment stands as a bulwark against government action designed to suppress ideas or information or to manipulate the public debate through coercion rather than persuasion. You don't think that applies in this case? No, Your Honor, I do not. I think that in this case, the Attorney General has issued and this goes to the question about whether litigating the merits is even appropriate, has issued simply an investigative request asking for information about whether these factual statements are true. If they are, they are not the basis of an enforcement action. And I would point this Court in that this goes to an important thing that gets conflated in a lot of the briefing here. The difference between the injury that Media Matters has asserted and the mechanism by which they have asserted it has occurred. Specifically, a chill to their reporting activities is the injury that is caused by the mere issuance of the CID. And the reason I separate those out is on page 11 of the Laird v. Tatum decision, the Court noted that the mere existence of a chill is insufficient without a regulatory, prescriptive, or compulsory government act. That statement was made 10 years after. The act is not the issuance of the CID? No, because Reisman held 8 years, I'm sorry, I said 10, 8 years before the Laird decision that a non-self-enforcing administrative subpoena like this CID is not compulsory. Reisman didn't involve an alleged chill of First Amendment activity? No, but Laird did. And Laird was after Reisman. I would like to tweak that just a bit. It did not involve an alleged chill under the First Amendment. It did involve an alleged chill of communication under the Sixth Amendment because it involved communications with the lawyer. And as this Court's sister circuits have held in the intervening decades, that previous ruling about the compulsory nature of a CID applies in First Amendment cases. In particular, I point this Court to Google against... So why aren't those cases distinguishable? Because in this case, the assertion is the CID was issued, that's the government act. And it has chilled First Amendment activity of media matters. And there are affidavits that attest to how they have had to alter their practices because of the CID. Because the chill by itself is not sufficient unless there is compulsion. And as Reisman recognized, as Balfoursh recognized, as Anheuser-Busch recognized, there's no compulsion with a non-self-enforcing CID. And I'd also point that might also allay some of this concern in Rayberg against Polk, which is a case that's on the merits, it's not on rightness. It just seems to me that the allegations in this case are a little bit different from the sources that you're citing because what they're saying is, even though there hasn't been an action to enforce the CID, the fact that it's there and it could be enforced is affecting their ability to do their work the way they used to do it. And that just seems different from what you're citing. Except in Laird, it was the same situation, where it was the existence of a government investigation and the court found that was insufficient to create a cognizable injury. I'd also point this court to page 51 of the Younger opinion, which says that the mere existence of a chill, or page 46, the anxiety associated with an investigation, is not itself enough to enjoin an otherwise lawful state of action. What are you arresting? Ripeness? Do I need to state a cause of action under the First Amendment?  All of the above, Your Honor. There are numerous doctrinal problems with this case. Our primary argument is Reisman because that is the cleanest under this court's sister circuit case law. But there's also personal jurisdiction. Including the sister circuit and Greewall? Greewall was a personal jurisdiction case, not a ripeness case. But it subsumed these same questions. I don't believe... that the court should have knocked it out if the circuit didn't. In that particular case, it wasn't a request for information. It was a cease and desist letter. Which is important because the request for information is what this court said every citizen is subject to in Reporters Commission against AT&T. Here, we have not concluded that there has been any violation of law. And we may yet conclude there has not been. We have simply asked for information because the news outlet is not exempt by itself from the DTP. That is consistent with the Supreme Court's decisions in Fransburg, in Bartnicki. The news outlets are required to follow the law just like everybody else. Isn't that a fishing expedition? What you've just described? That you don't know whether there's even a connection to Texas but you want to issue the CID to figure out if there is? No, Your Honor. We think that there is a good faith basis to think there is a connection to Texas. And we have issued a CID in what the first three requests are all about is there a connection to Texas. If Media Matters provides information to suggest that there is not, then we wouldn't bring an enforcement action. But the enforcement action, and this goes to Judge Edwards' question about whether or not the Greenwald case was right by itself. In the Fifth Circuit and other contexts that are related, they have said that a threat to bring an enforcement action is where you have the cognizable injury which is compulsion or constraint. That's consistent with the Laird decision that we were discussing earlier. What we don't have here is compulsion. They are not going to be penalized for not complying with this CID unless and until there is a court order requiring them to do so. And they can raise all of these concerns in a state court proceeding assuming one is ever brought. And that's what makes this case not right. It is entirely possible that an enforcement action will never be brought because it will be determined without a useful use. Well, the problem for you is if there are chilling effects and if that's a cognizable cause of action, your rightness thing falls apart. It's present. It's available. It's something that they can litigate now if there are chilling effects. Your Honor, that would be a departure from every one of the cases that the sister circuits of this court have brought. No, not at all. Twitter, for example, which looks faceably good for you, is distinguishable because the court there said there were no chilling effects. There are chilling effects here. There's something to proceed. The court in that case was saying the case would have gone forward had they been standing to pursue chilling effects. There were no chilling effects. Now, here the question is they're claiming there are chilling effects and it looks like the complaint is different here than it was on Twitter. Your Honor, it's no different. It's different than it was on Twitter. And I would point this court to page 475 of the Twitter opinion where the court talks about the affidavits and the allegations in that case. And my friend on the other side has suggested there were no affidavits in Twitter. That's simply factually wrong. And it said, for example, page 475, it is already that Twitter has put it in fourth. It is already being forced to weigh the consequences of a burdensome investigation every time it contemplates taking action. That's remarkably similar to Mr. DeMiero's statement on page 172 of the joint appendix saying that stories that would normally be published from our usual vetting process including stories about media matter coverage are, and I quote, receiving greater internal scrutiny and risk calculation. It's the same allegations and it's the same allegations that could be made for any investigation of a fraudulent claim. So if this court or a claim of fraud, if this court were to hold in media matters favor, it would depart from Twitter, from Rayburg against Polk, from all of the cases that are cited in our briefs. It doesn't depart from Twitter. It depends upon how you look at the First Amendment claims. And Reisman doesn't help you at all because they didn't decide on rightness. I'm not sure what Reisman says. I don't think any of you are either. Reisman says that there was no compulsion and therefore no cognizable injury. And your sister circuits have either dealt with that under the concept of rightness, which we think is the better way to look at it because what Reisman was talking about is whether or not there were contingencies that have not yet come to force. And in modern jurisprudence, that is a rightness question. But a number of cases, including the Rayburg ones that I've mentioned a number of times have found it in whether or not there's a cause of action. Either way, media matters loses. But even if you disagree with me on all of that, there's still a personal jurisdiction problem here about trying to enforce this, trying to litigate against the Texas Attorney General because as Burger King noted on page 7475, the foreseeability of an injury in this jurisdiction is insufficient to establish personal jurisdiction as a matter of due process. Let me ask you something about the Texas business code. This hasn't really been addressed in the briefs or by the district court, but I looked at it and section 17.61G says that the recipient of a demand can file a petition to set aside the demand in the district court in the county where the parties reside. Yes, Your Honor. And if the parties do not reside in Texas, they can do it in Travis County. But why isn't this the county where media matters resides? Because I can't under this the plain meaning of this provision. Why can't they bring this case in district court in D.C.? Because the in read in larger context, that is a county within the state of Texas and the district of Columbia. It doesn't say that anywhere. It says that in and I would have to, I'd be happy to send you a letter to give you the precise citation. But that particular question has been litigated in another case that and it was read to be in larger context in the county because the D.T.P.A. only discusses Texas and Texas. Is that because it anticipates that it will be enforced in Texas? It anticipates that will be enforced only as to conduct within Texas. It does specifically provide and I would point this court to 17.61D3 that there can be service outside of Texas by mail. And under those circumstances, it still has to be a violation within Texas. But it does not. But it does not have to be a violation that were people that are located in Texas precisely because we have a national and an international economy and things that happen outside Texas can be effective, can affect a state within the state. And that is why I understand. It just seems that this provision seems to contemplate if the attorney general chooses to try to enforce the Texas law. You can challenge it in the county where the parties reside, which seems fair. And in the larger and in a larger context of the statute, I'll see if I have it at the table and if I will, I'll give it to you during rebuttal. But the venue provision in the larger context of the D.T.P.A. provides specifically for venue in Travis County if you don't reside in a county in Texas. And so as a result, red in the larger context of the county in Texas is what that's referring to. So you're saying if your argument, your principal argument is this is not ripe, your principal claim should be that the district court should dismiss without prejudice and if and when the Texas attorney general attempts to move and do anything with the C.I.D., then the case will be resumed. That's your argument? That is the question of whether it can be resumed at that particular point becomes a different question under Younger because as Younger unequivocally stated, the longstanding policy of Congress with very few exceptions is that issues like this are litigated in state court. And so at that point there may be a different issue but the ripeness issue will likely have passed. We still would have the personal jurisdiction issue because both the only connection I'm taking that off the table for this question. I understand your arguments about personal jurisdiction. I'm just focusing on your ripeness. If the district court should have dismissed for one of ripeness then what you're saying that's got to be without prejudice. Yes, your honor. Until what happens? Until there is an effort to enforce at which point there is a compulsion. Then the question there will still be other arguments that are related some of which also relate to Reisman as your honor noted that has dealt with a number of different issues including whether there is a cause of action for a retaliatory investigation which we respectfully submit that there is not. But the ripeness argument at that point will have been dealt with. But we agree that this should have been dismissed without prejudice so that media matters can raise all of these issues in state court in response to. This is a section 1983 claim. I know it's not the cause of action doesn't seem to match what you're talking about at the podium because clearly federal courts have jurisdiction to look at section 1983 claims. That's what this is. Yes your honor. But the basis and this goes back to the Rayburg and Archer against Chisholm and a number of other cases that we cite in our brief that a retaliatory investigation that has not ripened into and this goes to why the two issues are related has not ripened into an actual enforcement action is not cognizable under 1983. But that's not the cause of action that the plaintiffs are bringing. They don't have to comport their complaint to what you think it should be. Their complaint is that their First Amendment rights are being violated by this investigation which is retaliatory and chills their First Amendment speech which seems to be quintessentially something that a federal court can look at. No your honor. Not under Archer against Chisholm not under Laird against Tatum and not under Rayburg. This court would be departing from all of those authorities to find an investigation by itself is the source of is the source of a 1983 claim. All of these claims are being litigated under section 1983. The question is whether that is a theory that is cognizable for retaliation for retaliation because retaliation involves a number of elements and the courts that are examining that retaliation have said that the investigation by itself is not an act that will and I believe the phraseology is chills that you argued that retaliation First Amendment retaliatory investigations are not cognizable. That's something you forfeited. That is something that they have asserted that we have forfeited and in response we have cited back to this court its standard for what is preservation which is that we have raised the issue that this is not a that this is not a claim on the merits and one reason that it is not a claim on the merits or a valid claim on the merits is that it is not a cognizable theory under section 1983. Going back to You didn't raise the retaliatory investigation below. We raised You didn't object to that. We did, Your Honor. We raised Where? In our I'll go look at it. I didn't find it the first time. We raised that they had not shown a likelihood of success on the merits. Did you say there is no such cause of action with respect to retaliatory investigation? I don't remember that. I don't believe That's a pretty easy argument to make if that's what you intended to say. We did not phrase it in that exact way. We phrased that they have not I believe that we phrased it in the way that they had not raised a and I believe the phraseology I don't remember the exact quote from our brief was that they have not raised a basis that would chill an ordinary speaker and that this is an elaboration or a clarification on what we were saying because it goes to the same element of what we're not doing. We expect more. Certainly, Your Honor. In order to avoid forfeiture. I respectfully disagree, Your Honor, but I take your point and the question then even if that's wrong have they shown and this we did raise is national whether they've shown an actual chill and under national treasury employees union they have to on page 1255 and they haven't in part because this would not be a reasonable something that would cause a reasonable person in their circumstance to have changed their behavior precisely because it's not for the reasons that it would not be cognizable but also because their own conduct and I would point this court to pages about 420 of the joint appendix shows they weren't in fact chilled and so as a result even if it were how that preserves the argument that there's no such thing as retaliatory First Amendment investigation? It preserves the argument that they have not raised a retaliatory that they have not raised a reason that a person in a similar circumstance would have chilled their speech that's a species of the same argument but if the court disagrees then it still has all of the other problems including that they have not shown a chill or retaliatory animus for that matter but we never even get to that because they haven't shown a cognizable harm this is going back to Laird against Tatum which is from 1972 the Supreme Court said that a chill what? You don't have to Great then assuming the court disagrees on that there's still the personal jurisdiction argument I see that I'm way over time you said that you understood our arguments I'm happy to answer any questions on personal jurisdiction but we strongly suggest that even if the court disagrees with me on the meaning of Reisman that this is not the appropriate form in which to be litigating this case Thank you We'll give you a couple minutes in reply Ms. Branch Good morning May it please the court Aria Branch on behalf of the appellees This is a unique case with very extreme facts It involves the extraordinary overreach by a retaliatory Attorney General who came to D.C. to harm a D.C. based media organization by serving a sweeping demand for their internal and external documents because he didn't like their speech and there's a reason why Attorney General Paxson had to come to D.C. to serve Media Matters that's because Media Matters has no presence in Texas It doesn't have an office there It doesn't have a registered agent there It doesn't engage in trader commerce at all and it certainly doesn't engage in trader commerce in Texas The District Court's  in joining Paxson's demand was well reasoned and largely based on facts that are not disputed Paxson did not dispute in the District Court that plaintiffs are chilled Plaintiffs submitted numerous affidavits documenting that chill how the demand is currently and presently affecting both the stories they chose to publish their editorial process and how they had in fact actually withheld articles on relating to X and Musk because of the chill of the demand that was hanging over their heads It's also not disputed that Paxson served the CID because of journalism that was published by Media Matters When Paxson commenced his investigation he called Media Matters a radical left wing anti-free speech organization and he encouraged other attorney generals to investigate Media Matters along with him Paxson now argues that despite the fact that he came to D.C. and inflicted harm on a D.C. based organization he can't be subject to suit here because his investigation was launched in his official capacity That argument is unsupported It's not supported by Ex parte Young which says that when an official a state official allegedly violates the federal constitution he is stripped of his official and representative character and subject to suit in his person for the consequences of his individual conduct His argument would also lead to absurd consequences for the jurisdiction of D.C. courts Attorney General Paxson just argued that their primary argument in this case is that plaintiff's lawsuit is not ripe because Paxson has not yet taken steps to enforce That argument is not supported by Reisman Reisman as the 9th circuit said in the Twitter v. Paxson case is not a case about ripeness at all and it's not a case about the first amendment Media Matters and Eric Kanunoke the plaintiff's and Reisman's lawsuit have shown via affidavits that they submitted to the district court that they were currently and presently being injured They could not wait for Paxson to decide to enforce the demand and have the CID hanging over every email they send every editorial decision they make every article they decide to publish like the sword of Damocles They are entitled because they are not relieved in their home jurisdiction in federal court in D.C. because Paxson came to D.C. and served the demand via his agent and he inflicted harm on Media Matters in D.C. Why are the claims here different from the claims in Twitter? Twitter is essentially saying I mean the threat when you look at this case there are a lot of cases like Laird like Selene which we issued here a year ago where you can look at this and say it's too soon you know there's nothing that has happened there's a possibility of something happening but it hasn't happened yet and so whether you go a Reisman way or whether you go a Laird way or whether you go traditional rightness normally or often we would say it has to await a different moment the way you're trying to get around it is to say we have a viable claim forget all the rest of it what might happen we have a viable claim because we've been chilled we've been injured so we're in play and we want an injunction against any further injury that's correct what cases support that approach that's correct your honor and i think the the different cases support that the twitter v paxton case supports that approach although in twitter but twitter goes the other way twitter goes the other way but it makes very clear that a chill and i quote from the opinion a chill a first amendment chill can itself be the harm and it's very clear that had the court found twitter talks about the possibility only to knock it down is there any case that either twitter or anybody else can point me to that says yeah that the survival notion the potential chilling effects that's the only way in my view you can survive all of these other concerns about this is too soon all of those doctrines whichever ones we go to they're a problem for you because nothing is happening but what your way around that is to say something happened already and we're showing the likelihood of a continuation of that happening and therefore we need relief now all i'm asking is is there anything other than what is rejection of that to support that   that both of  cases recognize that a first amendment chill is cognizable when a present and ongoing injury is being suffered and I also would point your honor to gray wall which is from the 5th circuit where the New Jersey attorney general sent a cease and desist letter and the 5th  asserted jurisdiction and found that the first amendment injury that was being suffered was actionable and so the bottom line here is that we have asserted a claim we have met the elements of the first amendment retaliation claim we have shown that we are engaged in first amendment protected conduct media matters is a news organization which is the hall mark of speech we have shown that Paxton issued the demand in response to an article that media matters published and that he did so without any basis without any investigation he issued the demand a day after X sued media matters in the  district of  and he did so solely he's admitted that he brought that lawsuit solely based on the allegations made in that lawsuit and finally we've shown what's the threat of the demand there it is that's the way they're trying to approach it there's nothing to it there it is and nothing can happen to you unless something happens and they haven't made it happen the threat of the demand is that it is an ongoing demand for a for all of media matters documents related to journalism under the under whatever laws in place we're not we're not responding we could and then there would be extreme consequences for that under texas law media matters could be held in  for failing to respond and anything to suggest that that's likely do you have any reasonable basis for assuming that that is a real threat i understand the argument about up there is a possibility but what i'm trying to understand is because otherwise it becomes self-serving you say well we're threatened we we take this to mean bad things and therefore we are threatened and you have to believe us when we say we're threatened well there are cases that say as you know selene we dealt with that say that's not enough just because you feel threatened doesn't mean that the law recognizes you as such what makes this what moves the needle on this and puts it in a different category well i think the question on you know whether or not you feel threatened is is it is is it reasonable that an objective person you know would feel threatened based on uh the cid that's been issued and the district court answered that yes correct your honor today they seem to be challenging the chill allegations that were made in the district court but below they did not and the question on the merits again is whether or not the district court abused its discretion and finding that we were likely to proceed on the merits and based on the record that he had before him at the time i think that answer is clearly yes why is this case more compelling on the chilling effects than the court thought the twitter case was because in twitter it's the same theory but the court rejects it and they said what was being asserted there was not enough what distinguishes the complaint here from the complaint that was being reviewed in twitter here we have put forth affidavits that show from the coo of media matters from the individual reporter who authored the november 16th article that is at issue here and also from his editor that media matters the CID is hanging over media matters like the sword of Damocles that every single email document they create could be subject to being turnover to the state of texas to further an investigation against them media matters is a journalism entity it has to be able to do its work and it can't do that with the CID hanging in the air and i would point your honor to the comments that i think judge pan raised earlier that paxton raised when he submitted the amicus brief in the exxon mobile case where he specifically said that a CID can have a chilling impact and that it can affect first amendment rights and when a CID is hanging in the air it does have an impact on the targets of that CID and so i think the the district court found that the plaintiffs         that they were particular ized and that they put forward evidence of chill that was uncontested in the district court and he had before him a clear record of chill and that's what makes this case different from twitter v paxton's case. In those cases they simply did not, the plaintiffs simply did not present evidence of a present injury to first amendment protected speech. I would just turn to the personal jurisdiction argument just briefly unless your honors have questions on it but we think it is very clear that paxton is a person under the D.C. jurisdiction. The D.C. courts exercise jurisdiction over federal officials who have their home offices in the district and other state officials when they come to the district and cause harm. The long arm statute is satisfied.  transacted business by sending a process server here which commenced the investigation and resulted in harm to media matters. We also satisfy a three of the long arm statute because he committed an act in the district by serving the CID here and he that act gave rise to our injury which is the chill of our first amendment rights. It is extraordinarily clear that paxton committed himself to a course of dealing in the district by serving the CID here. The CID contemplates that paxton would come to the district of Columbia to inspect and make copies of any documents that media matters had that is responsive to the CID. The district court found that due process is satisfied because he committed himself to engaging in a course of dealing and it was absolutely foreseeable that he could be held into court as a result of that. Unless your honors have further questions, I would ask that you affirm the district court's decision in joining paxton's investigation. Thank you. Thank you. Two minutes. Why don't you take two minutes? Starting with whether we are challenging the allegations of chill here. We are not as a factual matter because of the posture of this case. We are challenging whether it is legally sufficient. I would point this court to united Presbyterian courts. The chilling effect is cited as the reason why the government's action is invalid, not whether the plaintiffs have standing to challenge it. That principle goes all the way through most recently in clapper.  absent some compulsory act by the government, that is self inflicted. There is no compulsory act for a lot of the reasons that judge Edwards was describing. It is a request for information from an  accused of committing fraud. Their arguments because the media entities have no ability to commit fraud would apply to any entity that receives a fraud request. This court would be basically saying that it would be a chill to their speech in order to allow to investigate. That is inconsistent with decades of  Pointing to the question of whether they are under some sort of Damocles, they are not. Enforcement is not a rubber stamp in Texas. They can only be held in contempt if they are     that this would create absurd results relating to federal officers. That is inaccurate. I would point this court to 28 USC 1391E which creates nationwide service of process and nationwide venue for federal officials acting in their official capacity. That is simply irrelevant. Turning to their arguments on the long-arm statute, they point to the fact that we hired a process server. Their own authority at page 1066 equates a  like a process server with a piece of mail. Mail is insufficient because it is outside of the jurisdiction that may or may not have effects in the jurisdiction. That is effectively what they are asserting here,  jurisdiction based on a transaction. They have problems with that because the only way they can establish that the attorney general has pervasive contacts with the District of Columbia is to cite the speaking engagements of his subordinates. The problem with that is they can only tag the attorney general with those if they admit this is a suit against the office of  general, which they can't. This court unequivocally said in its  jurisdiction of this court. There are no further questions.  doubting the authorities supporting the notion that  effects is a viable notion? Indeed, as they say, Twitter itself says,  difference here is that the  court judge  year made findings and enough in those findings to support a claim of  effects. Are you doubting the  The circuits that she cited, the only case that comes close to this one is Twitter. We suggest that to the extent that  found that an investigation by itself is sufficient to create that type of chill and therefore cognizable injury, it's inconsistent with this court's ruling. Even under Twitter, because the evidence that was relied upon is very similar to what happened here, even under Twitter, as your honor noted, this case should have been dismissed. There are no further questions. We respectfully request you rehearse. Thank you.
judges: Henderson; Pan; Edwards